IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:17-cr-00101-AA |
| Plaintiff, | **OPINION AND ORDER** |
| vs. | |
| CONNER SCOTT OLMSTEAD, | |
| Defendant. | |

AIKEN, District Judge:

Before the Court is defendant Conner Scott Olmstead's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 62. For the following reasons, the motion is DENIED.

## BACKGROUND

In July 2016, Olmstead was arrested while in possession of over thirty pounds of methamphetamine. ECF No. 1. At the time of his arrest, Olmstead was on post-prison supervision for a prior robbery. *Id.* In March 2017, Olmstead was charged by

Information with Conspiracy to Distribute and Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii) and 846. ECF No. 22.

On April 5, 2017, Olmstead waived indictment and entered into a plea agreement with the Government. ECF Nos. 27, 28. On the same day, Olmstead pleaded guilty to the single count of the Information. ECF Nos. 26, 29. On February 8, 2018, this Court sentenced Olmstead to sixty months in prison with four years of supervised release. ECF Nos. 53, 54.

Olmstead began serving his sentence at FCI Sheridan. Olmstead experienced a prolonged period of solitary confinement before being transferred to FCI Herlong. Olmstead is twenty-seven years old and, although he has a history of marijuana and methamphetamine use, he has not smoked since entering BOP custody. As of the date of the hearing, there are no reported cases of COVID-19 at FCI Herlong. Olmstead was offered the COVID-19 vaccine by prison staff on April 27, 2021 but declined. At the hearing, Olmstead testified that he would prefer to receive the Pfizer vaccine, rather than the Moderna vaccine he was offered. Olmstead has served over 80% of his sentence and is scheduled for release to a halfway house on July 6, 2021.

Olmstead filed this motion on March 17, 2021. ECF No. 62. The Court heard oral argument on April 29, 2021 and May 6, 2021. ECF Nos. 67, 68.

## STANDARDS

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25

(2010). Compassionate release under § 3582(c)(1)(A) provides an exception in rare cases. Until 2018, § 3582 allowed compassionate release only upon a motion by the Bureau of Prisons ("BOP"). With the passage of the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (Dec. 21, 2018), Congress authorized courts to modify a defendant's sentence on a motion filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that two conditions are met: (1) that "[e]xtraordinary and compelling reasons warrant such a reduction" and (2) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." If the court finds that those conditions are met, before granting a sentence reduction, it must "consider[] the factors set forth in [18 U.S.C.] § 3553(a) to the extent applicable[.]" 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (reasoning that "[18 U.S.C. §§ 3582(c)(1) and (c)(2)'s parallel language and structure[] compel us to conclude that compassionate release hearings are sentence-modification proceedings and that courts considering motions filed under § 3582(c)(1) must follow a *Dillon*-style test" and describing the three-part test for compassionate release motions (citing *Dillon*, 560 U.S. at 827, 829–30)).

The Sentencing Commission's policy statement regarding sentence reductions under § 3582(c)(1)(A) is found at U.S.S.G. § 1B1.13. The policy statement identifies categories of extraordinary and compelling reasons, including the defendant's age, medical conditions, and family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). It also requires courts to find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* § 1B1.13(2). But this policy statement, which has not been updated since the First Step Act amended § 3582(c)(1)(A), only applies to motions filed by the BOP Director on behalf of a defendant. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). On a defendant's direct motion for compassionate release, the policy statement "may inform a district court's discretion, . . . but [it is] not binding." *Id.* As a result, the court may consider any extraordinary and compelling reason for release that a defendant might raise. *Id.*

## DISCUSSION

Olmstead submitted his request for compassionate release to the Warden of FCI Sheridan on August 12, 2020 and received no response and the Government concurs that Olmstead has exhausted his administrative remedies. Olmstead's motion is therefore properly before the Court.

Olmstead contends that his long history of smoking places him at elevated risk of contracting COVID-19. It is notable, however, that Olmstead's history of smoking is related to marijuana, rather than tobacco. Although cigarette smoking has been recognized as posing an increased risk of severe illness from COVID-19, that

recognition has not been extended to marijuana smokers. *United States v. Douglas*, Case No. 1:04-cr-00201-SEB-TAB-2, 2021 WL 679069, at *3 (S.D. Ind. Feb. 19, 2021). And even accepting that marijuana use contributes to COVID-19 risk, Olmstead does not suggest that he has continued to smoke marijuana while in BOP custody. The Court accepts that Olmstead has not smoked in approximately five years and commends his accomplishment but concludes that historical use of marijuana or methamphetamine does not constitute an extraordinary and compelling reasons for release. Nor do Olmstead's mental health conditions warrant compassionate release, notwithstanding the additional strain of the pandemic. *See United States v. Adkins*, Case No. 19-cr-00651-BAS-1, 2020 WL 3058097, at *2 (S.D. Cal. June 9, 2020) ("[M]ental health problems exacerbated by anxiety over COVID-19 is insufficient to rile to the level of 'extraordinary and compelling' circumstances warranting compassionate release."). In addition, the Court notes that there are no documented cases of COVID-19 at FCI Herlong and that Olmstead was offered the vaccine but he declined to take it.

In his Reply, Olmstead clarified that he does not seek relief based solely on his present risk from COVID-19. Instead, he argues that the extreme circumstances he has already experienced while incarcerated at FCI Sheridan and FCI Herlong both before and during the COVID-19 pandemic present extraordinary and compelling reasons to reduce his sentence. As noted, Olmstead was held in segregation for months while at FCI Sheridan and, although he represented at the hearing that he

was no longer in segregation at FCI Herlong, the facility remains in a state of reduced and constrained operations as part of efforts to prevent the spread of COVID-19.

And though the Court agrees that the pandemic, and associated conditions at FCI Sheridan and FCI Herlong, have made Olmstead's incarceration harsher than the Court anticipated at the time of sentencing, the conditions experienced by Olmstead have not been so severe or unusual that they constitute extraordinary and compelling reasons for release. The Court need not reach consideration of the applicable sentencing factors under § 3553(a), without a finding of extraordinary and compelling reasons.

As noted, Olmstead is scheduled to be released into a halfway house in July 2021. Although the rare and extraordinary nature of compassionate release constrains the Court from granting the present motion, the Court recommends that BOP transfer Olmstead to a residential reentry center ("RRC") at the earliest practicable time to allow him the maximum amount of time in community corrections for his transition out of custody and back into the community. *See Sacora v. Thomas*, 628 F.3d 1059, 1061–62 (9th Cir. 2010) (recognizing that 18 U.S.C. §§ 3621(b) and 3624(c) "govern the BOP's authority to place inmates in its custody in RRCs"); 18 U.S.C. § 3621(b)(4)(A)–(B) (authorizing BOP to "designate the place of the prisoner's imprisonment" upon consideration of, in pertinent part, "any statement by the court that imposed the sentence concerning the purposes for which the sentence to

imprisonment was determined to be warranted; or recommending a type of penal or correctional facility as appropriate,").[1]

## CONCLUSION

Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release), ECF No. 62, is DENIED without prejudice and with leave to renew if circumstances change. The Court will consider any renewed motion on an expedited basis.

It is so ORDERED and DATED this <u>10th</u> day of May 2021.

        /s/Ann Aiken
Ann Aiken
United States District Judge

---

[1] The closure of the RRC in Eugene and cuts to the Northwest RRC in Portland represent a deeply regrettable contraction of resources available to inmates transitioning back to life in society. Olmstead is fortunate to enjoy the support of his family and the prospect of gainful employment upon his release and the Court looks forward to working with Olmstead in Reentry Court.